BOSTON, APPELLEE, *v.* DAUGHERTY, ADMR., ET AL., APPELLEES; INDIANA FARM BUREAU COOPERATIVE ASSN., D.B.A. QUEEN CITY RIVER ELEVATOR, APPELLANT.

(No. C-830144—Decided February 8, 1984.)

*Butkovich, Schimpf & Luken Co., L.P.A.,* and *Mr. Ralph P. Ginocchio,* for appellee Boston.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. William C. Cunningham,* for appellees Daugherty and Industrial Commission.

*Messrs. Frost & Jacobs* and *Mr. Gary L. Herfel,* for appellant Indiana Farm Bureau Coop. Assn.

BLACK, J. In this appeal by an employer from an award of death benefits from the Workers' Compensation Fund, we conclude that the court of common pleas committed no error in ruling against the employer, even though we disagree with the court's reasoning. We believe that the court erred in holding that under R.C. 4123.519 (appeal to court of common pleas; costs; fees)[1] and R.C. 4123.522 (failure to receive notification), the court lacked jurisdiction to hear the appeal. We hold, nevertheless, that the court properly granted the claimant's motion for sum-

---

[1] R.C. 4123.519 reads in pertinent part:

"The claimant or the employer may appeal a decision of the industrial commission * * * in any injury or occupational disease case, *other than a decision as to the extent of disability,* to the court of common pleas. * * * Notice of such appeal shall be filed by the appellant with the court of common pleas *within sixty days after the date of the receipt of the decision appealed from* or the date of receipt of the order of the commission refusing to permit an appeal from a regional board of review. Such filings shall be the only act required to perfect the appeal and vest jurisdiction in the court.

"* * *

"* * * The court, or the jury under the instructions of the court, if a jury is demanded, shall determine *the right of the claimant to participate or to continue to participate in the fund* upon the evidence adduced at the hearing of such action.

"* * *

"The cost of any legal proceedings authorized by this section, *including an attorney's fee to the claimant's attorney to be fixed by the trial judge in the event the claimant's right to participate or to continue to participate in the fund is established upon the final determination of an appeal, shall be taxed against the employer* or the industrial commission if the industrial commission or the administrator rather than the employer contested the right of the claimant to participate in the fund. * * *" (Emphasis added.)

mary judgment because under the Equal Protection Clause of the Fourteenth Amendment, as interpreted by *Weber* v. *Aetna Cas. & Sur. Co.* (1972), 406 U.S. 164, the word "child" must be interpreted to include an illegitimate child.

Franklin Carl Newland ("decedent") was killed on February 14, 1979, while in the course and scope of his employment in Ohio for defendant-appellant, Indiana Farm Bureau Cooperative Association ("Association"). Plaintiff-appellee, Linda Boston ("Linda"), filed a workers' compensation claim on behalf of herself as the decedent's common-law wife and on behalf of Tonia Newland ("Tonia") as their daughter. Initially both claimants were awarded benefits, the hearing officer finding the existence of a common-law marriage between the decedent and Linda. The Association appealed to the Dayton Regional Board of Review, which allowed the death claim but held that there was no common-law marriage and that no benefits were to be paid to either Linda or Tonia. The effect of this order was to rule that Linda was not the decedent's widow, and that Tonia was his illegitimate daughter. Nevertheless, benefits were denied Tonia. Linda appealed to the Industrial Commission. On August 28, 1981,[2] the commission made the following order, which appellant now seeks to reverse:

"It is the decision of the Industrial Commission to grant the widow-claimant's Appeal to the following extent only; that the order of the Dayton Regional Board, dated 6-23-80, be modified to the following extent: That the death claim be allowed; that there was no Common Law Marriage and that therefore no benefits are to be paid Linda Boston; *that Tonia Newland is the illegitimate daughter of Franklin Newland,* deceased, and Linda Boston; that evidence of record rebutes [*sic*] the presumption that Tonia Newland was fully dependent on her natural father at the time of his death.

"It is the further finding and order of the Commission that *Tonia Newland is entitled to 50% of the full benefits in this claim;* payable in accordance with the Statute with respect to payment of death benefits to minors." (Emphasis added.)

Linda did not appeal, but the Association did. There was later activity causing a separate and different appeal, not pertinent to this appeal.[3]

The record suggests that copies of the quoted order were mailed to Linda and the Association on September 21, 1981, but the uncontroverted evidence is that the Association did not receive notice of it until March 10, 1982, when a copy was delivered by an assistant attorney general to an attorney representing the Association. The reason for this anomaly is not disclosed. The instant appeal was filed by the Association in the court of common pleas on March 31, 1982, or twenty-one days later.

The appeal was dismissed by the court of common pleas on cross-motions for summary judgment, and Linda was awarded attorney fees pursuant to a separate motion. We find no error in these orders, but as suggested above, we do not agree with the trial court's reasoning.

---

[2] The record is not clear about the date of the order appealed from, but in oral argument, the parties agreed to Linda's assertion that it was August 28, 1981.

[3] Later, on October 27, 1981, the commission "clarified" an allocation of payments apparently made to Linda under the initial determination that she was decedent's common-law widow, by providing that the total of these payments should be deducted from Tonia's benefits. Appellant received a copy of this order before it received a copy of the August 28, 1981 order, and appealed it to the court of common pleas. We affirmed the dismissal of that appeal in *Boston* v. *Daugherty* (1983), 12 Ohio App. 3d 4.

That court held that the Association had filed its appeal to the court after the sixty-day period allowed in R.C. 4123.519, that R.C. 4123.522 provides the sole and exclusive remedy in the event of a failure to receive a notice of such an order, and that the order appealed from was "a decision as to the extent of disability." We hold, on the contrary, that the appeal was timely filed under R.C. 4123.519, that the remedy provided in R.C. 4123.522 does not apply to this appeal, even as an alternative remedy, and that the order appealed from was not "a decision as to the extent of disability." Thus we find merit in the Association's claims that the court erred in its holdings that the appeal was not timely filed (the first assignment of error), and that the order appealed from was not appealable (part of the second assignment of error). We find no merit, however, in the Association's claims that the court erred in granting Linda's motion for summary judgment (the essence of the second assignment of error) and in granting her motion for attorney fees (the third assignment of error).

The appeal to the court of common pleas was in good time because it was filed twenty-one days after "the date of receipt of the order appealed from," as required by R.C. 4123.519. This filing may have been six months and ten days after the date of mailing (September 21, 1981), as the trial court noted, but that is irrelevant under the clear and unequivocal language of the statute.

R.C. 4123.522[4] is "strictly an intra-agency remedy which does not affect an appeal under R.C. 4123.519." *Skiba* v. *Connor* (1983), 5 Ohio St. 3d 147, 149. R.C. 4123.522 provides a procedure to correct the situation when a party has lost a right to pursue a remedy by not receiving notice; to be entitled to use that procedure, the complaining party must have already lost his right (such as, a right to appeal an adverse administrative decision). An appeal from the agency to the courts, however, cannot be lost until after the complaining party has in fact received notice of the adverse decision; he must first receive a copy of the decision and then let sixty days pass before he loses his right to appeal. R.C. 4123.522 has no application to R.C. 4123.519.

The determination of whether the August 28, 1981 order was appealable under R.C. 4123.519 presents a more difficult question. Decisions dealing with the "extent of disability" are not appealable. The meaning of this phrase has been conclusively held to mean "the extent of participation in the workers' compensation fund." As the Supreme Court summarized in *Miraglia* v. *B.F. Goodrich Co.* (1980), 61 Ohio St. 2d 128, 130 [15 O.O.3d 163]:

"It is firmly established that, once the claimant's right to participate in the fund is established, the commission has the exclusive jurisdiction to determine *the extent of the participation.*" (Emphasis added.)

The court went on to state:

"* * *the *right to participate* is appealable, but the *extent of participation* is not appealable." (Emphasis *sic.*)

It is uncontrovertable that one of the

___

[4] R.C. 4123.522 reads:

"The employee, employer and their respective representatives shall be entitled to written notice of any hearing, determination, order, award or decision under the provisions of Chapter 4123. of the Revised Code.

"If any person to whom a notice is mailed shall fail to receive such notice and the industrial commission, upon hearing, shall determine that such failure was due to cause beyond the control and without the fault or neglect of such person or his representative and that such person or his representative did not have actual knowledge of the import of the information contained in such notice, such person may take the action afforded to such person within twenty days after the receipt of such notice of such determination of the industrial commission. Delivery of such notice to the address of such person or his representative shall be prima facie evidence of receipt of such notice by such person."

decisions reached in the August 28, 1981 order was to determine the extent to which Tonia could participate in the fund; it was fixed at fifty percent of the full death benefits. The order contains other decisions, however, and some of these are preliminary to the decision about Tonia's percentage of participation. One of them was that Tonia was entitled as an illegitimate child to participate in the fund. The order does not state this decision *in haec verba*, but it is necessarily and inevitably implicit in the order. The earlier administrative order (by the Dayton Regional Board of Review) was that Tonia could not receive any benefits at all, but on August 28, 1981 the commission modified that order by granting Tonia's claim to participate. Even though Tonia was illegitimate because her parents were not married, she was awarded benefits that the prior order had denied her. Thus the August 28, 1981 order contains decisions both about Tonia's right to participate and about the extent of her participation. If the juxtaposition of these two decisions in the same order were to be unappealable under R.C. 4123.519, then an employer could never appeal any order that contains a decision about a claimant's extent of participation when the same order contains a decision about right to participate. We believe this is patently unfair and unreasonable.[5] The statute clearly gives the right of appeal to both claimants and employers, and this intention must be given effect.

We hold that the Association had, under R.C. 4123.519, the right to appeal the decision to allow Tonia to participate in the fund, even though that decision was contained in an order that also decided the extent of her participation. Otherwise stated, the Association had a right to appeal the August 28, 1981 order insofar as it decided on Tonia's right to participation in the fund, even though it had no right to appeal that order insofar as it decided the extent of participation.

As is abundantly clear from the Association's arguments in both of the briefs and oral argument before this court, and in its written memorandum before the trial court, the only issue sought to be raised by the Association is whether Tonia as an illegitimate child is entitled to recover death benefits from the Workers' Compensation Fund. We believe this legal issue, which requires no finding in fact under the cross-motions for summary judgment in this case, has been conclusively decided against the Association, and that the Association is not entitled to judgment as a matter of law. While *Staker* v. *Indus. Comm.* (1933), 127 Ohio St. 13, and *Miller* v. *Indus. Comm.* (1956), 165 Ohio St. 584 [60 O.O. 522], held that under the statute *sub judice* (R.C.

---

[5] As we decided in the first appeal, referred to in fn. 3 above, an order is appealable that does not decide extent of participation. On the other hand, if the employer (or the claimant) fails to appeal in timely fashion the order establishing (or denying) a claimant's right to participate in the fund, he is no longer entitled to raise any issues about that right, and he cannot revive those issues in a later appeal. *Hospitality Motor Inns, Inc.* v. *Gillespie* (1981), 66 Ohio St. 2d 206 [20 O.O.3d 209]. We believe that the judgment against the claimants in *Reeves* v. *Flowers* (1971), 27 Ohio St. 2d 40 [56 O.O.2d 22], is consistent with the foregoing despite the language found in the opinion to the effect that the only appealable order is one that is an absolute denial going to the basis of the claimant's right. As the Supreme Court noted in *Zavatsky* v. *Stringer* (1978), 56 Ohio St. 2d 386, 392 [10 O.O.3d 503], that language would eliminate any and all appeals by the employer, even though the order appealed from absolutely established the claimant's right to participate. Fairness requires that an employer be entitled to appeal an order containing a decision that a specific claimant is entitled to participate in a death claim as well as a decision that the death was directly and proximately caused by work-related injury or disease. This should be allowed even though the order appealed from also contains a decision or decisions about the extent of participation.

4123.59) as then in effect, an illegitimate child could not participate, not only has the statute been amended, but also the following language of the United States Supreme Court (if not its specific application to the Louisiana laws under consideration) in *Weber* v. *Aetna Cas. & Sur. Co., supra,* at 175-176, in effect renders the underlying concepts in those holdings no longer binding and forecloses any other result in the instant case than the denial of the Association's sole claim:

"The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual — as well as an unjust — way of deterring the parent. Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where — as in this case — the classification is justified by no legitimate state interest, compelling or otherwise." (Footnote omitted.)

The ultimate claim is feckless and summary judgment was properly granted.

As to the award of attorney fees to Linda, R.C. 4123.519 plainly states that a claimant's attorney fees shall be taxed against an employer when the claimant's right to participate or to continue to participate is established on final determination of an appeal. *Hospitality Motor Inns, Inc.* v. *Gillespie* (1981), 66 Ohio St. 2d 206 [20 O.O.3d 209]. The trial court did not err in awarding attorney fees to Linda.

We affirm.

*Judgment affirmed.*

PALMER, P.J., and KEEFE, J., concur.